The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.



Dated: September 26 2024

John P. Gustafson
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 18-30025 |
| | ) | |
| Charles J. Gbur, Jr. | ) | Chapter 11 |
| Carolyn S. Gbur | ) | |
| | ) | |
| Debtor(s). | ) | JUDGE JOHN P. GUSTAFSON |

**MEMORANDUM OPINION AND ORDER REGARDING DEBTORS' OBJECTIONS TO INTERNAL REVENUE SERVICE'S AMENDED CLAIM NUMBER 6–6 AND AMENDED ADMINISTRATIVE CLAIM NUMBER 15–2**

This matter comes before the court on Debtors' Charles J. Gbur, Jr.'s, and Carolyn S. Gbur's Objections to the Internal Revenue Service's Amended Proof of Claim (Claim No. 6-6) and the Amended Administrative Claim (Claim No. 15-2), collectively referred to as the "Objections to Claims" [Doc. #348]. The United States of America, on behalf of the Internal Revenue Service (the "IRS"), has filed Motions for Summary Judgment on these Objections ("Motions") [Docs. ##349–50]. The Debtors, in response to the IRS Motions, assert their plea for a complete abatement of penalties and interest for the tax years 2009 to 2015, along with a request for the recalculation of their 2016 taxes under 11 U.S.C. §505(a)(1) [Doc. #348]. The IRS

contends that its claims are permissible under 11 U.S.C. §§502 and 503.

## I.    INTRODUCTION

Initially, the issue before the court is not whether the Debtors' claims for relief have merit, but rather whether the court should adjudicate those claims at all. The tax claims before the court were filed in the underlying Chapter 11 bankruptcy case,[1] the claims arise out of the Debtors' alleged income tax liability to the IRS. The Debtors seek to reduce their tax liability, and eliminate their tax penalties and interest for 2016, as well as a full abatement of all penalties and interest for the tax years 2009 to 2020.

In response, the IRS seeks summary judgment in opposition to the Debtors' Objections to Claims. In doing so, it asserts, *inter alia*, that Debtors have not established the necessary jurisdictional prerequisites for their Objections. For the reasons explained below, the court finds that the positions of the IRS appear to have some merit, and that the appropriate response to the IRS' Motion for Summary Judgment is permissive abstention. [Doc. #349].[2]

## II.    FACTS

On January 4, 2018, the Debtors commenced this case by filing a petition for relief under Chapter 13 of the United States Bankruptcy Code. On August 15, 2018, the court entered an order granting the Debtors' Motion to Convert this Case to a Case under Chapter 11 of the United States Bankruptcy Code. [Doc. #88]. On July 22, 2019, the court entered an Order, confirming the Debtors' Chapter 11 Plan of Reorganization. ("Plan") [Doc. #176]. In their bankruptcy filing, the Debtors listed outstanding liabilities to the IRS, arising from unpaid income taxes assessed against

---

1/ The court notes that this Chapter 11 case was converted from a Chapter 13 effective August 15, 2018. *See*, [Doc. #88].

2/ Regardless of whether specifically referred to in this Memorandum of Decision, the court has examined the submitted materials, weighed the credibility of the witnesses, considered all of the evidence, and reviewed the entire record of the case.

the Debtors.

The IRS filed its initial proof of claim (Claim No. 6-1) on March 6, 2018. Claim 6-1 was for $1,013,421.00, with $985,063.92 secured (with interest at 4%) and $28,357.08 unsecured.[3] The Debtors objected to the claim on March 14, 2018. [Doc. #46]. The initial objection of the Debtors stated that the debts for tax years 2010 to 2015 were overstated in the return, and that these returns were being reviewed by a tax attorney and should be "reduced significantly." [*Id*.] Also, certain property was going to be liquidated, and the proceeds would reduce the secured tax claim. [*Id*.]. The court set the matter for Hearing on June 5, 2018. At that Hearing, the court denied the initial objection without prejudice to the filing of an Amended Objection.

From there, the court held numerous non-evidentiary hearings, as the Debtors and the IRS conducted certain discovery, and the Debtors attempted to find tax assistance to fix the mistakes they asserted their prior accountant had made. Amended claims were filed by the IRS, and objections by the Debtors would follow. Hearings were set approximately every 90 days - interspersed with certain seeming resolutions - for years. During the years that the Chapter 11 case was active, the parties never went forward with a final hearing to determine the amount of the IRS Claims.

At present, the liabilities in issue are reflected in the IRS's sixth Amended Proof of Claim, designated Claim Number 6-6. Pursuant to their Claim, the IRS set forth that it was owed the sum of $168,202.55. Of this amount, $166,882.16 is claimed as an allowed secured claim; the remaining amount of $972.53 is claimed as an unsecured claim, with $972.53 of the unsecured amount asserted to be a priority claim pursuant to 11 U.S.C. §507(a)(8). The remaining $348.16 being claimed as a general, unsecured claim. [Claims Register, Claim 6-6]. The Debtors filed an

---

3/ The IRS proof of claim was one part of the Debtors' Chapter 13 debt limit problem.

3

Objection to this Claim. [Doc. #308]. The IRS also filed an administrative expense claim [Doc. #306] pursuant to 11 U.S.C. §503 in the amount of $52,947.97 ("Administrative Claim") with penalties and interest continuing to accrue from and after July 15, 2022, until the claim is fully paid.

The Debtors also filed an Objection to the IRS' Administrative Claim, Claim Number 15-2. [Doc. #306].

Finally, the parties having concluded their discovery, negotiations, claim amendments, etc., the Debtors and the IRS agreed to submit cross-Motions for Summary Judgment. Those Motions and Responses were filed in late 2023.

a. *Tax Errors and Relief Requests*

Prior to their bankruptcy filing, Debtors utilized the services of an accounting firm to manage their tax returns and bookkeeping. Debtors filed their tax returns, but based on the information they provided, they did not pay their taxes in a timely manner. Ultimately it was discovered that accounting errors had been made for the years 2009–2015 (and Debtors now assert for the 2016 tax year), resulting in an overstatement of their tax liabilities.

In attempting to discover the reason(s) for what they believed was an overstatement of their income, Debtors sought the assistance of a new accounting firm, reached out to the IRS to attempt to rectify the situation, and attempted to recover their funds. However, their initial efforts proved unsuccessful. Subsequently, they tried to obtain IRS records regarding this matter based upon a Freedom of Information Act ("FOIA") request, but their request was denied based on the FOIA being inapplicable.

Debtors then engaged the services of a third accounting firm in their quest for a determination of their proper tax liability, also sought IRS authorization for this third firm to

represent them in their pursuit. The IRS rejected this initial authorization request. Nevertheless, Debtors persisted, successfully securing the authorization on a subsequent attempt. However, the IRS initially remained steadfast in its denial of the overpayment claim.

Debtors aver that filing for bankruptcy became an inevitable step due to the financial losses incurred from paying income taxes in excess of the proper amounts owed and attempting to prove the overpayments. They also filed amended tax documents and returns, but argue that due to delays on the IRS's part, compounding interest and penalties ensued.

At one point, the Debtors thought the overpayment issue was due to embezzlement. Later, it was discovered that their long time pre-Petition accounting firm had made an error, every year, on their fourth quarter income and tax calculations. This error on the part of their accountants resulted in the Debtors filing income tax returns that showed they owed more in taxes than they actually owed.

It appears that the Department of Justice ("DOJ") informed Debtors that they would be afforded some flexibility in addressing the overstatement issues with their tax returns. Indeed, the IRS eventually acknowledged much of the overstatements in tax years 2009–2015. More recently, Debtors asserted that they overpaid their income tax liability for 2016. Finally, Debtors assert that they lack income tax filing expertise, and that their reliance on their initial accounting firm (and its errors) should allow them to essentially utilize equitable principles to go back and broadly undue the harm.

On this basis, Debtors seek the following relief from the court:

(1) Application of the tax liability reductions granted for the years 2009–2015, as outlined in the Agreed Order, to the tax year 2016.

(2) A substantial reduction of penalties and interest, ideally reducing them to zero, for the tax

year 2016.

(3) A complete abatement of all penalties and interest for the years 2009–2020.

### III. LAW AND ANALYSIS

#### A. Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Wilson v. Gregory*, 3 F.4th 844, 855 (6th Cir. 2021). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–88, 106 S.Ct. 1348, 1355–57, 89 L.Ed.2d 538 (1986).

The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The moving party can discharge its initial burden of proof by either coming forward with evidence showing the absence of a genuine issue of material fact or by showing that there is no such issue by pointing out to the court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325, 106 S.Ct. at 2554.

Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct.

2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id*. "The non-moving party, however, must provide more than mere allegations or denials . . . without giving any significant probative evidence to support" its position. *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). The parties have not presented specific factual disputes regarding the legal issues which are presently before the court.

### A.

Section 1 of the Internal Revenue Code ("IRC") imposes a federal tax on the taxable income of every individual. 26 U.S.C. §1. *In re Carson*, 227 B.R. 148, 150 (S.D. Ind. 1998). Section 63 of the IRC defines "taxable income" as gross income minus allowable deductions. *Id*.; 26 U.S.C. §63. The IRC sets forth provisions for the assessment and collection of various types of taxes, including income tax.[4] At issue here are estimated tax payments required to be made under 26 U.S.C. §6654.

### B. Debtors' Request For A Refund For The 2016 Tax Year

Broadly speaking, there are three prerequisites to filing suit for a refund of federal taxes. Debtors "must first pay at least the amount 'of the penalty assessment attributable to [their] withholding tax . . . .'" *In re Swain*, 437 B.R. 549, 560 (Bankr. E.D. Mich. 2010); *Leeke v. United States,* 737 F.Supp. 1013, 1015 (S.D. Ohio 1990)(citing *Flora v. United States,* 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958), *aff'd on rehearing,* 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960)); *Steele v. United States,* 280 F.2d 89, 91 (8th Cir.1960). Debtors "next must file an administrative refund claim with the IRS." *See, In re Swain*, 437 B.R. at 560(citing *Roberts,* 242 F.3d at 1065); 26 U.S.C. §7422(a). "The administrative claim must be either disallowed or not

---

[4] It is important to note that the tax code is subject to change through legislation.

acted upon within six months after it was filed with the IRS," and then a refund suit may be filed. *See, id.*(citing *Roberts,* 242 F.3d at 1067); 26 U.S.C. §6532(a)(1).

The IRS raises several statutory issues with Debtors' Objection and request for relief, one bankruptcy specific, and two that involve more general requirements under the Internal Revenue Code.

First, the IRS notes that the Debtors' Chapter 11 Plan [Doc. #130] was confirmed, subject to a Stipulation entered into with the IRS [Doc. #175], meaning that unless otherwise provided for in the Plan, all property, arguably[5] including the requested refunds, vested in the Debtors and are no longer property of the estate. *See*, 11 U.S.C. §1141(b).

If the right to receive the requested tax refunds have vested in the Debtors, it is at least questionable whether 11 U.S.C. §505 provides this court with authority to decide the issue of the tax refunds Debtors have asked this court to order. Section 505(a)(1) is a very broad grant of authority to make tax determinations, but it appears to be limited by the specific prohibition in §505(a)(2)(B), which states – "(2) The court may not so determine: (B) any right of the estate to a tax refund, before the earlier of – (i) 120 after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or, (ii) a determination by such governmental unit of such request;". *See*, *City of Jersey City v. Mocco (In re Mocco)*, 2002 WL

---

5/ The word "arguably" is used because the confirmed Chapter 11 Plan provided for delayed vesting of property secured by federal tax liens:

> (b) Treatment of Secured Claim of IRS
>
> Under this Plan, and as provided for in this Class, the Secured Claim of the IRS shall be treated as a fully secured claim for purposes of 11 U.S.C. § 506(a). Until its Secured Claim is paid in full, the IRS shall retain its lien on all property in which the Debtors have an interest to the same extent as provided under applicable law. Once its Secured Claim is fully paid as provided for in this Plan, any interest held by the IRS in the Debtors' property shall vest in the Debtors free and clear of any interest claimed by the IRS in the Debtors' property. No prepayment penalty shall apply to any amounts due to the IRS under this Plan.

[Doc. #130, at pp. 15-16].

8

18-30025-jpg    Doc 360    FILED 09/26/24    ENTERED 09/26/24 15:38:03    Page 8 of 20

31160138 at *3, 2002 U.S. Dist. LEXIS 18592 at **9-10 (D.N.J. Sept. 30, 2002).

Courts have held that the requirement that the "trustee" request the refund is a limitation on the bankruptcy court's authority to decide a refund issue. *See*, *U.S. v. Bond*, 762 F.3d 255, 260-261 (2nd Cir. 2014)(reversing the bankruptcy court and holding there was no jurisdiction to decide the refund issue when a "liquidating trustee" sought the refund because it was "not a 'trustee' as that word is used in the Code."). The IRS argues that the "trustee" never made a valid request for refund, and therefore this court may not rule on the request under §505(a)(2)(B).

The IRS further argues that no valid refund requests were made for two reasons, based on a failure to comply with two statutory requirements. *See*, *In re Armstrong*, 206 F.3d 465, 472 (5th Cir. 2000)("A proper request under the Internal Revenue Code requires compliance with [26 U.S.C.] §§ 7422 and 6511. *See United States v. Ryan (In re Ryan)*, 64 F.3d 1516, 1520–21 (11th Cir.1995).").

The position of the IRS is that, even leaving out the "trustee" issue, neither §7422 nor §6511 were complied with by the Debtors in this case. No formal request for a tax refund was made to the IRS for a refund of any of the funds in issue.

Under 26 U.S.C. §7422(a), no suit for a refund may be maintained until "a claim for refund or credit has been duly filed with the Secretary[6] . . . ." This requirement has been described as: "unusually clear, and does not appear to admit any exceptions". *See*, *In re Haines*, 2008 WL 4279374 at *2, 2008 Bankr. LEXIS 3035 at *5 (Bankr. W.D. Wash.. Sept. 11, 2008)(quoting *In re Graham*, 981 F.2d 1135, 1138 (10th Cir. 1992)). The IRS provided an Affidavit of Rhonda Morris, stating: "The IRS records to which I have access show that the IRS has no record of the Debtors having filed an administrative claim for refund or credit with the IRS for the 2009 through 2020

---

6/ "The term 'Secretary' means the Secretary of the Treasury or his delegate." 26 U.S.C. §7701(a)(11)(B).

9

income tax years." [Doc. #349-2, p. 5, ¶10].

A more specific timing requirement is found in §6511(a): a tax refund must be filed within three years of the time the return was field, or within two years of the time the tax was paid. *Id*. at 469. Section 6511(b)(1) provides that no refund shall be allowed or made unless a claim was filed within the limits set up by §6511(a). *Id*. The IRS has asserted, and the Debtor has not challenged, that the 2016 taxes were paid as of December 4, 2017. [Doc. 350-1, p. 5, ¶18, and Ex. A-1]. To be timely under §6511(a), it appears that any request for refund would have had to have been filed with the Secretary before 2020.

The Debtors here never filed a written refund request with the "Secretary". Instead, they argue that the oral requests that were made to the IRS were either sufficient to be considered compliant with §6511(a), or that the actions of the IRS were so unreasonably unhelpful that this requirement should be excused – or the court should find compliance based on some combination of these two equitable arguments. These arguments may be fairly characterized as being at the cutting edge of current tax law, and would – if they were held to be legally viable – require this court to evaluate the reasonableness of the actions of the IRS in responding to a situation where the taxpayers believed they were being overcharged for income taxes, but did not know why.

In response, the Debtors point to case law that has required, in certain circumstances, the IRS to not take inconsistent positions when they have previously accepted a taxpayer's position. Essentially, Debtors argue that because the IRS has accepted the Debtors' position that they overpaid for several tax years prior to 2016 – based on the accounting error they now assert also occurred in the 2016 tax year return – the IRS must therefore apply the same reasoning to the 2016 tax year now that it has been brought to its attention. The problem with this position is, it seeks to use a rarely-used equitable principle to overcome the statutory untimeliness of Debtors' request

for a 2016 refund.

As sympathetic as the Debtors' tax situation may be, it does not appear that the court should go down the path of evaluating whether some exception exists to the Internal Revenue Code's requirements for allowing a refund, when the court's jurisdiction to do so under §505(a)(2)(B) is questionable, or perhaps 'questionable at best'.

Even if the court were inclined to weigh the plain statutory language regarding refund requests against the equitable argument that the IRS is essentially bound by its prior settlement position, that argument does not necessarily create an exception to the court's jurisdictional issue under §505(a)(2)(B). While this court is not an expert on the interplay of statutory language and equity in the realm of tax law, the Supreme Court has been very clear that equity does not displace statutory requirements in the bankruptcy arena. *See e.g.*, *Law v. Siegel*, 571 U.S. 415, 421, 134 S.Ct. 1188, 1194, 188 L.Ed.2d 146 (2014)("whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of" the Bankruptcy Code.).

As other decisions have noted, there are other courts that could hear these issues. As the Fifth Circuit Court of Appeals stated in *Luongo*: "there is no reason why the suit cannot be heard by a district court, the Tax Court, or the Court of Federal Claims." *In re Luongo*, 259 F.3d 323, 331 (5th Cir. 2000).

Accordingly, this court will, as it believes is its prerogative based on the questions presented and the late stage of this Chapter 11 proceeding, exercise its right to invoke permissive abstention on the Debtors' claim for a refund from the IRS.

First, the court acknowledges that: "Abstention from the exercise of federal jurisdiction [however] is the exception, not the rule." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976); *In re Nationwide Roofing*

11

*and Sheet Metal*, 130 B.R. 768, 778 (Bankr. S.D. Ohio 1991). However, under the more particularized test for abstention on tax issues under Section 505(a), the court believes abstention on this issue is appropriate.

In addition to the tax refund specific issues discussed above, there is a more generalized question of this court's jurisdiction under cases like *Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1137 (6th Cir. 1991). The jurisdictional issues in tax matters are discussed in cases like *In re Johnston*, 484 B.R. 698, 705-714 (Bankr. S.D. Ohio 2012). Bankruptcy law issues do not predominate in this case. Federal tax law issues do.[7]

One of the factors to be considered in permissive abstention is judicial economy. Because statutory jurisdiction to order tax refunds under federal tax law, Section 505(a)(2), and general principles of the limits of related to jurisdiction are questionable, any decision this court would make could be reversed on those grounds, regardless of the correctness (or incorrectness) on the merits.

Moreover, the statute that provides authority to decide tax issues does not require the bankruptcy court to decide those issues, because it states that "the bankruptcy court <u>may</u> determine":

> Regardless of whether § 505 is jurisdictional, it is undisputed that the court's power under § 505 to determine tax liability is discretionary. *See In re Beisel*, 195 B.R. 378, 379 (Bankr.S.D.Ohio 1996)("Section 505(a)(1) allows but

---

7/ There is case law reflecting that a bankruptcy court's jurisdiction under Section 505(a) should stretch to its maximum when non-tax creditors are adversely affected. "Creditors are entitled to protection from the 'dissipation of an estate's assets' in the event that the debtor failed to contest the legality and amount of taxes assessed against it. Having the bankruptcy court adjudicate the matter may also afford an alternative forum for proceedings that might otherwise delay the orderly administration of the case and distribution to the debtor's creditors." *In re New Haven Projects Ltd. Liability Co*., 225 F.3d 283, 288 (2nd Cir. 2000), quoting, *In re Onondaga Plaza Maintenance Co., Inc*., 206 B.R. 653, 656 (Bankr. N.D.N.Y. 1997). Put a little more broadly, "Where a bankruptcy court abstains under § 505, 'it is generally when the litigation of a tax issue furthers no bankruptcy purpose....'" *In re Gordon*, 2011 WL 3878356 at *6, 2011 Bankr. LEXIS 3446 (Bankr. S.D.N.Y. Aug. 30, 2011), *quoting*, *In re G–I Holdings, Inc*., 2003 WL 22273256 at *10, 2003 U.S. Dist. LEXIS 16317 at **25-26 (D.N.J. 2003).

> does not require the Bankruptcy Court to determine a debtor's tax liabilities.") and *In re Galvano*, 116 B.R. 367 (Bankr.E.D.N.Y.1990)(authority under § 505 to determine tax liability is discretionary).

*In re Johnston*, 484 B.R. at 708-709.

Accordingly, the court will abstain from deciding the Debtors' entitlement to a refund for the 2016 tax year.

### C. The Abatement Of Penalties And Interest

The request for abatement of penalties and interest are subject to a similar analysis. The Debtors seek to have interest and penalties abated for the 2016 tax year, and also to have all interest and penalties reduced or eliminated. Generally, the taxpayer bears the burden of proof when disputing tax liabilities with the IRS. *See*, *Helvering v. Taylor*, 293 U.S. 507, 515, 55 S.Ct. 287, 290–91, 79 L.Ed. 623 (1935).

The litigation regarding the proofs of claim filed by the IRS were resolved by an Agreed Order [Doc. #278], establishing the Debtors' tax liabilities for the years 2009-2015 in a reduced amount, based on Debtors' second proof of claim objection (filed after the case converted to a Chapter 11 proceeding). In addition to the filing of an amended claim for the pre-Petition taxes owed for the tax years resolved in the Agreed Order, the IRS also filed Amended Claim 6-6 for secured claims for post-Petition interest, unsecured priority claims for interest, and unsecured general claims for penalties. The IRS asserts that: "Proof of Claim 6-6 does not reflect any tax due for the 2016 income tax year." [Doc. #350-1, p. 5, ₱17]. The IRS also contends that Debtors only "dispute" interest and penalties in Claim 6-6 in an amount less than $400. [Doc. 350-1, p. 7, ₱25]. However, the Debtors' Objection seeks a broadly framed abatement of penalties and interest. [Doc. #348, pp. 11-15].

13

The initial position of the IRS is that there is Supreme Court authority that only the Tax Court may abate penalties and interest. *See*, *Hinck v. U.S.*, 550 U.S. 501, 127 S.Ct. 2011, 167 L.Ed.2d 888 (2007). In that case, the Hincks filed a claim with the IRS asserting that, because of IRS errors and delays, the interest assessed against them for specified periods should be abated under §6404(e)(1). *Id*. at 505. The IRS denied the request, and the Hincks then filed suit in the U.S. Court of Federal Claims seeking judicial review of the refusal to abate. *Id*. at 505–06. The Federal Claims court granted the government's motion to dismiss for lack of jurisdiction based upon §6404(h), and the taxpayers appealed. *Id*. The U.S. Court of Appeals for the Federal Circuit affirmed, and the Supreme Court granted Certiorari. *Id*. at 506. The Supreme Court ruled that §6404(h) granted the tax court exclusive jurisdiction to review the IRS's refusal to abate under §6404(e)(1). *Id*. at 506; *see also*, *U.S. v. Gill*, 2007 WL 2310780 at *3, 2007 U.S. Dist. LEXIS 58042 at **9-10 (M.D. Fla. Aug. 9, 2007)("Recently, however, the Supreme Court held that § 6404(h) vests the Tax Court as exclusive forum to review the Secretary's refusal to abate an interest claim. *Hinck v. United States*, 550 U.S. 501, 127 S.Ct. 2011, 2012-13, 167 L. Ed. 2d 888 (2007). Consequently, this Court is without authority to review the Defendant's abatement argument.").

However, there is at least one bankruptcy case that has held that *Hinck* did not apply to restrict a bankruptcy court's authority under §505(a), and ruled on the issue of a requested abatement, although not under §6404(e)(1). *See*, *In re Wyly*, 552 B.R. 338, 636-639 (Bankr. N.D. Tex. 2016)(dealing with a mandatory suspension of interest under 26 U.S.C. §6404(g)).

The Debtors point to the fact that they filed their income tax returns timely – that they just failed to pay because the amount was overstated based on the erroneous income number they were using based on their accountant's mistakes. They point to case law that generally supports not imposing penalties when the taxpayer relied upon a tax expert, and that tax professional made a

mistake. *See*, *In re Fisk's Estate*, 203 F.2d 358 (6th Cir. 1953)(a case involving the late filing of estate tax returns by an attorney).[8]

However, there is a distinction to be made between a debtor asserting that penalties and interest are legally improper under a specific provision of the Internal Revenue Code or regulations, and making a more general equitable argument that the interest and penalties are essentially an abuse of the IRS's discretion. *See generally*, *Matter of Carlson*, 126 F.3d 915, 920 (7th Cir. 1997)("[Debtors] never asserted that either §6601(a) itself or its application to their situation were illegal; they only say it is unfair. They also never argued that the IRS miscalculated the amount of interest due. Section 505(a)(1), therefore, has no application to a situation of this sort. In regard to §105(a), although a bankruptcy court is a court of equity, it cannot use its equitable power to circumvent the law.").

### D. The Debtors' Request For An Abatement Of Interest

"Interest on a Federal income tax underpayment arises automatically under section 6601. Under section 6601(a) the interest 'shall be paid for the period from * * * ['the last date prescribed for payment'] to the date paid.'" *Verghese v. Comm'r of Internal Revenue*, T.C. Memo 2021-70, at *9 (Tax Court June 7, 2021); *see also*, *Johnson v. United States*, 602 F.2d 734, 738-739 (6th Cir. 1979). "Congress authorized the IRS to abate interest for reasons specified in section 6404, and the IRS's decisions whether to abate interest are subject to abuse-of-discretion review by this Court. *See* sec. 6404(h)(1)". *Id.* at *10.

> Section 6404(a)(1) empowers the IRS to abate the unpaid portion of the assessment of any tax or any liability in respect thereof that is "excessive in amount". But what section 6404(a) gives, section 6404(b) takes away (in certain circumstances). *See*, *e.g.*, *Urbano v. Commissioner*, 122 T.C. at 390. Section 6404(b) provides that a taxpayer may not file a claim for abatement "in respect of an assessment of any tax imposed under subtitle A or B." We have held that section

---

8/ Debtors also cite holdings in older criminal cases, which the court does not find persuasive.

18-30025-jpg    Doc 360    FILED 09/26/24    ENTERED 09/26/24 15:38:03    Page 15 of 20

6404(b) precludes abatement under section 6404(a)(1) of interest on income tax. *See Urbano v. Commissioner*, 122 T.C. at 395; *Kersh v. Commissioner*, T.C. Memo. 2009-260, 98 T.C.M. (CCH) 458, 462 (2009); *Corson v. Commissioner,* T.C. Memo. 2009-95, 97 T.C.M. (CCH) 1498, 1500 (2009).

*Adams v. Comm'r of Internal Revenue*, T.C. Memo. 2019-99 at **8-9 (Tax Court Aug. 12, 2019).

There is a narrow exception to what appears to be §6404(b)'s general abatement prohibition:

> Section 6404(e)(1)(A) authorizes the Commissioner to abate an assessment of interest on "any deficiency attributable * * * to any unreasonable error or delay by an officer or employee of the Internal Revenue Service * * * in performing a ministerial or managerial act". "Ministerial act means a procedural or mechanical act that does not involve the exercise of judgment or discretion, and that occurs during the processing of a taxpayer's case after all prerequisites to the act, such as conferences and review by supervisors, have taken place." 26 C.F.R. sec. 301.6404-2(b)(2), Proced. & Admin. Regs. A "[m]anagerial act" is "an administrative act that occurs during the processing of a taxpayer's case involving the temporary or permanent loss of records or the exercise of judgment or discretion relating to management of personnel." *Id*. subpara. (1). A decision concerning the proper application of Federal tax law is neither a managerial nor a ministerial act. Id. para. (b).

*Verghese*, T.C. Memo 2021-70 at *3.

It appears that the Debtors have cited ministerial acts that they allege caused some delay in resolving the issue of the proper underlying tax liability. Those acts were in providing complete documents to the Debtors that they had properly requested,[9] and taking over 8 months to process their amended returns. [Doc. 348, p. 4]. Arguably, they are also asserting that no significant aspect of the error or delay was attributable to the taxpayers. 26 U.S.C. §6404(e)(1)(B).

---

[9] Part of the delay in Debtors getting documents from the IRS was because Debtors' original request was done under the Freedom of Information Act (FOIA), and the IRS rejected that as improper. [Doc. 348, p. 2]. The Debtors do not seem to have even argued that the FOIA request to the IRS was, in fact, proper. An error or delay is considered "only if" no significant aspect of the error or delay is attributable to the taxpayer involved. 26 U.S.C. §6404(e)(1)(B). If Debtors made a non-compliant request for documents, that would appear to be a significant aspect of the delay that would be attributable to Debtors. The period of that delay would not seem to be subject to abatement under the statute.

What the Debtors have not done is make a particularized request based on the specific time periods that the delay prevented them from paying their taxes:

> [A] request for abatement under section 6404(e) cannot be formulated as a broad request to waive all interest; rather, the taxpayer must identify a mistake by the Commissioner and must also link the mistake to a specific period of delay as to which interest should be abated. *See Hancock v. Commissioner*, T.C. Memo. 2012-31, 2012 WL 311663, at *4 (*citing Hill v. Commissioner*, T.C. Memo. 2009-39, *Guerrero v. Commissioner*, T.C. Memo. 2006-201, and *Braun v. Commissioner*, T.C. Memo. 2005-221). The "requisite correlation between an error or delay attributable to the Commissioner and a specific period of time is, for the most part, missing where a taxpayer requests that all interest with respect to the deficiencies be abated." *Braun v. Commissioner*, 2005 WL 2293523, at *5 (*citing Donovan v. Commissioner*, T.C. Memo. 2000-220).

*Verghese,* T.C. Memo 2021-70 at *11.

It is an interesting question as to what treatment this court should give to Debtors' allegations – finding the allegations insufficient, allowing amendment, or relying on older "notice pleading" cases. However, two things appear to be clear: 1) the amount of interest that could be abated if the Debtors were to prevail under §6404(e) is much less than a full abatement of interest; 2) the court would make that determination subject to reversal if it exceeded its authority under the Supreme Court's decision in *Hincks*. Further, just applying general statutory interpretation concepts to Section 6404, the fact that there is a specific statute covering abatement proceedings would seem to undermine Debtors' appeals to equity as a basis for the general abatement of all interest. *See*, *Matter of Carlson*, 126 F.3d 915, 920 (7th Cir. 1997).

Together with the permissive abstention factors discussed above, 1) the prohibition in *Hincks*, 2) the smaller amount that appears to actually be in issue, and 3) the potential of an alternate forum more expert in these issues, all weigh in favor of permissive abstention by this court.

17

### E. The Debtors' Request For The Elimination Of Penalties

The abatement or elimination of penalties involves several different tax provisions. The IRS states: "The Debtors were assessed penalties for dishonored payments, failure to timely file their returns (26 U.S.C. § 6651(a)(1)), failure to timely pay (26 U.S.C. § 6651(a)(2)), and failure to make estimated tax payments (26 U.S.C. § 6654)." [Doc. #356, p. 7].

The Debtors contend that "the Gburs did file their tax returns in a timely manner". [Doc. 348, p. 12]. The timely filing of returns appears to be a genuine issue of material fact that is in dispute.

The Debtors argue that: "26 U.S.C. §§ 6651 and 6656 allow for the imposition of penalties for failure to file returns, pay taxes or make deposits 'unless it is shown that such failure is due to reasonable cause and not due to willful neglect.' 26 U.S.C. § 6651, § 6656. A taxpayer to avoid tax penalties must establish 'a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship.' *Brewery, Inc. v. United States*, 33 F.3d 589, 592 (6th Cir. 1994), citing 26 C.F.R. § 301.6651-1(c)(1)." [Doc. 348, p. 7].

The Debtors assert that they exercised ordinary "business care and prudence". Accordingly, the Debtors contend they should have their tax penalties avoided based on the plain language of the statutes.

The IRS agrees with the existence of the exception: "'unless it is shown that such failure is due to reasonable cause and not due to willful neglect.' 26 U.S.C. § 6651(a)(1) and (2). To establish reasonable cause, a taxpayer must show that 'he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship . . . if he paid on the due date.' Treas. Reg. § 301.6651-1(c)(1)." [Doc. #349-1, p. 12].

This issue appears to be one where there is a genuine issue of material fact. The IRS states that the Debtors cannot meet the requirements for the avoidance of penalties by blaming their former accountants. While that may not be a winning argument in and of itself, the IRS bolsters that argument by asserting that "even if the Debtors' former accountants had correctly reported their liabilities on their federal returns through 2015 (i.e., the amounts set forth in the Agreed Order), the Debtors still would have been assessed the mandatory penalties because they underpaid their corrected liabilities: [attaching a chart]" [Doc. #349-1, pp. 13-14].

Debtors also contend that the reason they did not fully pay their tax obligations for the 2018 through 2020 tax years is because payments were misapplied by the IRS. This is during the time the now-Chapter 11 case was pending with this court. The IRS argues that the prima facie validity of its claim has not been rebutted by the Debtors' evidence.

These are close questions, but on summary judgment the court finds that – viewed in the light most favorable to the non-moving Debtors - there are genuine issues of material fact, albeit those issues may arise from the court's inability to confidently divine the facts through the murky lens of an IRS tax transcript.

For the reasons stated in this opinion, the court elects to permissively abstain from Debtors' assertion they are due a refund, and that the court should order abatement of interest. Finally, the court will deny the IRS's Motion for Summary Judgment on Debtors' Objection to the penalties that are included in the IRS's Proofs of Claim.

**THEREFORE**, good cause appearing,

**IT IS ORDERED** that the IRS's Amended Proof of Claim (Claim No. 6-6) and the Amended Administrative Claim (Claim No. 15-2) be, and hereby are not disallowed to the extent they assert claims for interest.

**IT IS FURTHER ORDERED** that the IRS's Motion for Summary Judgment is Denied to the extent the Debtors seek the avoidance of penalties.